

E-SERVED
06/23/04
04:56 PM ET
Baycol MDL 1431

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re BAYCOL PRODUCTS LITIGATION

This Document Relates to:
*Willie Willingham, et al., v. Bayer Corp., et al.*
*Georgeanne Dean, et al. v. Bayer Corp., et al.*

MDL No. 1431
(MJD/JGL)

Case No. 03-2927
Case No. 04-0701

### PLAINTIFFS' MOTION FOR RELIEF FROM PARTS I(A)
### AND I(B) OF PRETRIAL ORDER NO. 114

Taylor, Martino & Hedge, P.C. and the Barrett Law Firm submit their Motion for Relief from Parts I(A) and I(B) of Pretrial Order No. 114 in its present form and states as follows:

### Introduction

The Plaintiffs file this motion pursuant to Part I(F) of Pretrial Order No. 114, which provides that "[a] plaintiff may bring a motion . .. before this Court seeking relief from the provisions of Parts I(A) and I(B) if the plaintiff asserts that no applicable law requires a case-specific expert report attesting that Baycol caused the plaintiff to suffer injuries or damages, or that no supporting medical, sample or prescription records exist, or that no report or records are available."[1] The Plaintiffs represented by the above-named law firm ("Plaintiffs") move the Court for relief from Parts I(A) and I(B) of Pretrial Order No. 114 on the ground that no applicable law requires case-specific expert reports attesting that Baycol caused them to suffer injuries or damages.

---

[1]Parts I(A) and I(B) of Pretrial Order No. 114 require each plaintiff either to "serve a Rule 26(a)(2) case-specific report from a medical expert attesting that Baycol caused the plaintiff to suffer injuries or damages," or to "serve a letter and supporting documents subsequently followed by a case-specific expert report."



**Argument**

Plaintiffs reside in Alabama and Mississippi. As previously presented in our Objection to PTO No. 102, the laws of those states do <u>not</u> require case-specific expert reports attesting that Baycol caused Plaintiffs to suffer injuries or damages.[2]

There are two aspects to causation. One concerns whether Baycol is capable of causing the symptoms suffered by the plaintiffs; the other is whether Baycol did in fact cause those symptoms. The first issue is one that would fall outside the scope of common knowledge of ordinary persons, and therefore expert testimony would be required. That issue is <u>not</u> before the Court, however, because "Defendants do not dispute that Baycol can cause an injury." *In re: Baycol Product Liability Litigation*, MDL No. 1431, Pretrial Order No. 94 at 14. Indeed, the Baycol label warns that the product can cause the muscle pain and weakness experienced by the Plaintiffs.

The only causation issue before the Court is whether Baycol did in fact cause Plaintiffs' injuries. To make that determination, the jury will need to decide whether Plaintiffs ingested Baycol, whether they suffered injury subsequent to ingestion, whether some other event in Plaintiffs' lives could have caused that injury, and whether Baycol was in fact the cause of the injury. As shown below, under applicable state laws, because those inquiries are within the common knowledge of ordinary persons, no expert evidence is required.

This case is, from an evidentiary view, analogous to vehicular accident and other personal injury cases. Every year, a great number of those types of cases are tried, where claimants present only lay evidence about the accidents or other events leading to their injuries and the injuries

---

[2] "In the present case, as the injury occurred in the state of plaintiff's residence, the substantive law of the state of plaintiff's residence should be applied to their claims." *In re: Baycol Product Liability Litigation,* MDL No. 1431, Pretrial Order No. 94 at 14.



themselves.  Courts have determined that such claims may proceed to the jury, even without expert evidence regarding causation.  *Dennis v. Prisock,* 221 So. 2d 706, 710-11 (Miss. 1969) (holding that plaintiff could testify about back injuries she suffered after automobile accident and the fact that she did not have those injuries prior to the accident, and that expert evidence was not required); *Page v. Cox & Cox Inc.*, ____ So. 2d ____, 2004 WL 406085, *4 (Ala. Civ. App. March 5, 2004) (stating that "[m]edical causation may be found by the trial court without testimony from medical doctors" and reversing summary judgment for defendant where lay evidence showed that plaintiff fell off ladder, injured knee on sharp object, and was unable to perform job functions subsequent to injury).

The general rule that emerges from the case law of Plaintiffs' states of residence is that "where there is an *obvious* causal relationship" between the injury complained of and the actual act, no expert testimony is needed.[3]  *Lattanze v. Silverstrini*, 448 A.2d 605, 608 (Pa. Super. 1982) (emphasis in original).  *See Penrod Drilling Co. v. Etheridge,* 487 So. 2d 1330, 1334 (Miss. 1986) ("If the issue of causal connection is strongly supported by lay testimony and the surrounding circumstances . . . , then negative medical evidence, which admits the causal connection as a possibility, may suffice for an award of compensation."  (internal marks and citations omitted)); *Page v. Cox & Cox, Inc.* ___ So. 2d ____, 2004 WL 406085, *4 (Ala. Civ. App. March 5, 2004) ("'[W]here . . . injury appears in a bodily member reasonably soon after an accident, at the very place where the force was applied

---

[3]Virginia courts allow cases to proceed with only lay evidence of causation regardless of the nature of the relationship between the injury and the alleged act, assuming that the quality of the evidence will be reflected in the weight given to it by the fact finder.  *See Todt v. Shaw*, 286 S.E.2d 211, 213 (Va. 1982) ("It is implicit in our holding in *Sumner v. Smith*, 220 Va. 222, 257, S.E.2d 825 (1979), that lay testimony of causal connection between an automobile accident and injury is admissible for whatever weight the fact finder may choose to give it, even when medical testimony fails to establish causal connection expressly."); *Sumner v. Smith,* 257 S.E.2d 825, 827 (Va. 1979) ("While failure or inability to adduce direct medical evidence, generally relied upon to establish a causal connection between injury and accident, may significantly increase the plaintiff's risk of non-persuasion, such evidence is not a prerequisite to recovery.").



with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a natural inference that the injury, whatever may be the medical name, was the result of the employment.'" (quoting *Valente v. Bourne Mills*, 75 A.2d 191, 194 (RI 1950))); *Dawson v. Briggs*, 107 S.W.3d 739, 753 (Tex. App. 2003) ("A fact finder may find the required causal nexus between the event sued upon and the plaintiff's injuries when [] general experience and common sense will enable a layperson fairly to determine the causal nexus . . . Generally, lay testimony establishing a sequence of events that provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation."); *Eannottie v. Carriage Inn*, 799 N.E.2d 189, 192 (Ohio App. 7 Dist. 2003) ("[E]xpert testimony is not admissible if the opinion expressed is within the ken or range of knowledge of the jury.  Such testimony is only admissible if it is sufficiently beyond common experience."  (internal marks and citations omitted)); *Age v. HCA Health Serv.*, 2002 WL 1255531, *2 (Tenn. Ct. App. June 7, 2002) ("Causation must be proved by expert testimony unless the matter is within the common knowledge of lay persons."); *Kensington Mfg. Co. v. W.C.A.B.,* 780 A.2D 820, 823 (Pa. Cmwlth. 2001) ("Where the causal connection between claimant's injury and employment is obvious, and, thus, is clear to the lay observer, unobjected to hearsay evidence relating to that causal connection must be corroborated by competent evidence, but not necessarily by unequivocal medical evidence."); *Houghton v. Bond*, 680 So.2d 514, 523 (Fla. 1st DCA 1996) ("[I]n certain cases, a defendant will not need an expert to sustain his burden of proving a causal relationship between the injuries sustained and the plaintiff's failure to use a seatbelt," such as where the plaintiff sustained an impact-related injury.); *Kenton County Public Parks Corp. v. Modlin*, 901 S.W. 2d 876, 881 (Ky. App. 1995) ("[N]o reversible error was committed by the exclusion of the expert testimony . . . Our case does not involve any technical matters.  It's a question of 'garden-variety negligence.'");



*Belshaw v. Feinstein*, 65 Cal. Rptr. 788, 794 n.2 (Cal. App. 1968) ("The more esoteric kinds of medical causation demand expert testimony; others are within the reach of lay experience."); *see also Jordan v. Bero,* 210 S.E.2d 618, 635 (W. Va. 1974) ("Where the injury is of such a character as to be obvious, the effects of which are reasonably common knowledge, it is competent to prove either by lay testimony from the injured litigant or others who have viewed his injuries, or by expert testimony . . . or from both lay and expert testimony.").

What is meant by "an obvious causal relationship" is clarified in *Lattanze v. Silverstrini,* 448 A.2d 605 (Pa. Super. 1982), as well as in Florida cases on the seatbelt defense.  First, in *Lattanze,* the court stated that "[a]n obvious causal relationship exists where the injuries are either an 'immediate and direct' or the 'natural and probable' result of the alleged negligent act.  The two must be so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection."  448 A.2d at 608 (internal marks and citations omitted).  Examining case law where no expert medical evidence was required to show causation, the court found there to be two common characteristics: "The first is that the respective plaintiffs began exhibiting symptoms of their injuries immediately after the accident or within a relatively short time thereafter.  The second is that the injury complained of was the type one would reasonably expect to result from the accident in question."  *Id*.  Applying that analysis, the court determined that, because the plaintiff was in an automobile accident, was thrown around inside the vehicle, suffered neck, back, shoulder and head injuries, and did not have any of those symptoms prior to the accident, "the jury could have concluded that there was an obvious causal relationship between the accident [] and appellant's symptoms that manifested themselves the same day."  *Id.* at 609.  The court reversed the trial court's grant of a directed verdict in favor of the defendant.  *Id.*



Second, Florida cases concerning the seatbelt defense show what kind of causal relationship is necessary for the case to proceed without expert evidence. In those cases, a defendant attempts to decrease his or her liability by showing that the plaintiff's injuries resulted from the plaintiff's failure to wear his or her seatbelt. While noting that "[i]t is obvious that the specific dynamics of seatbelts in various automobile collision scenarios is not a matter within the common understanding of juries or, for that matter, judges," courts have permitted cases to proceed without expert evidence on seatbelt dynamics, reasoning that "the jury's common sense may be enough where the evidence establishes that the injury complained of is an impact injury." *State Far, Mut. Auto. Ins. Co. v. Smith*, 565 So.2d 751, 752-53 (Fla. 5th DCA), *cause dismissed*, 570 So.2d 1306 (Fla. 1990).

> The rule appears to be that in certain cases, such as those involving non-impact sprains/strain or orthopedic injuries . . ., the party offering a seatbelt defense is required to present expert testimony because the precise cause of plaintiff's injury (i.e., whether the injury would have occurred had the plaintiff worn his seatbelt) is not within the province of the jury . . . *[But] in certain cases, a defendant will not need an expert to sustain his burden of proving a causal relationship between the injuries sustained and the plaintiff's failure to use a seatbelt.* The court in *Smith* gave, as an example of such a case, a case in which the plaintiff sustained injury by being ejected from a motor vehicle following an accident. It reasoned that whether the plaintiff's injuries in such case resulted from the failure to wear his seatbelt would be within the province of the jury. In *Burns v. Smith*, 476 So.2d 278 (Fla. 2d DCA 1985), the plaintiff sustained . . . an impact-related injury . . . The Second District specifically rejected the plaintiff's contention that in the absence of expert testimony relative to the seat belt defense, there was no evidence of the causal relationship between his failure to wear a seatbelt and his injuries.

*Houghton v. Bond*, 680 So.2d 514, 523 (Fla. 1st DCA 1996) (emphasis added). The *Houghton* court held that the defendant did not have to present any expert testimony about the effect of the plaintiff's failure to wear a seatbelt, as long as the defendant could "present competent evidence that [the plaintiff] was not wearing his seatbelt and competent evidence that his injuries resulted from impact



within the interior of the vehicle.  The effect of [the plaintiff's] failure to wear his seatbelt in this case was for the jury to decide."  *Id.*

Applying the *Lattanze* and seatbelt-defense analyses here, Plaintiffs' claims should be able to proceed without expert evidence.  The first *Lattanze* element - when the plaintiff began experiencing symptoms - is one for which no expert testimony is needed.  Plaintiffs and other lay witnesses can testify regarding when Plaintiffs began experiencing symptoms, and whether they experienced such symptoms prior to ingesting Baycol.[4]  That evidence would fall within the common knowledge of ordinary persons.  The second *Lattanze* element - whether the injury complained of is the type one would reasonably expect to result from the accident in question - has already been satisfied by the Defendants' admission that Baycol can cause the symptoms experienced by the plaintiffs.

---

[4]The relevant states permit lay witnesses to present evidence constituting a differential diagnosis - that is, to show that the plaintiff suffered injuries that he or she did not suffer prior to the defendant's actions.  *See, e.g., Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (holding that evidence established "a sequence of events from which the trier of fact may properly infer, without aid of expert medical testimony, that the release of chemical fumes from the typesetting machine caused the plaintiff to suffer injury" where the plaintiff testified that she had always been in good health prior to installation of typesetting machine near her desk, that she worked with her face two inches from typesetting machine which was leaking chemical fumes, and that shortly thereafter she developed physical problems); *Dennis v. Prisock*, 221 So.2d 706, 710 (Miss. 1969) ("'[A witness] may state simple inferences drawn by him from his own conscious subjective sensations as to his physical condition, and may testify as to the condition of his health and freedom from sickness at a particular time; and, according to some cases, may state his notion or feeling as to the character or extent of an injury and the person results he has experienced therefrom.  So it has been held or recognized that it is permissible for a witness to state his suffering or the pain which he suffered after an injury, and how he suffered, and the extent of his suffering, by reason of a personal injury .'" (quoting 32 CJS Evidence § 546 (22) (1964)); *Classic Imports, Inc. v. Singleton*, 702 So.2d 1187, 1190 (La. App. 4 Cir. 1997) (lay witnesses testified about plaintiff's success as business executive before accident and how her ability was impaired after accident); *Piel v. Dillard,* 414 So. 2d 87, 91 (Ala. Civ. App. 1982) ("In Alabama a lay witness familiar with the physical condition of an injured person before and after an injury is competent to testify to changes in that condition after an injury."); *Lattanze v. Silverstrini*, 448 A.2d 605-609 (Pa. Super. 1982) (reversing directed verdict for defendant where lay evidence showed that plaintiff experienced symptoms after automobile accident and that he did not suffer those symptoms prior to accident); *see also Hamburger v. State Farm Mut. Auto. Ins. Co.,* ____ F.3d ____, 2004 WL 383366, *9 (5th Cir. March 2, 2004) (applying Texas law) (holding that expert testimony not required to establish that plaintiff's disc injury arose from accident where plaintiff testified that "(1) prior to the accident, he had never had any problems with his neck, (2) during the collision, his head went forward and snapped back against the headrest, (3) immediately after the collision, his neck felt stiff, and (4) over the next few months, the pain progressively worsened and began to spread to his shoulder and arm").



Additionally, under the seatbelt defense analysis in *Houghton*, Plaintiffs' injuries are impact-related injuries, and thus no expert evidence is needed.

The case *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729 (Tex. 1984), is instructive because the plaintiff allegedly suffered injury from ingesting Baycol. In *Morgan*, the plaintiff alleged she was injured from chemical fumes emitting from a typesetting machine located near where she worked. *Id.* at 731. The issue was whether the chemical fumes actually caused the plaintiff's injuries. *Id.* at 732-33. The plaintiff presented only lay evidence, which showed that she did not have the symptoms before the typesetting machine was moved to her area, and that shortly after the machine was moved near her she began experiencing breathing problems, swelling and impaired vision. *Id.* at 733. The court determined that the plaintiff established "a sequence of events from which the trier of fact may properly infer, without aid of expert medical testimony, that the release of chemical fumes from the typesetting machine caused the plaintiff to suffer injury." *Id.*

Plaintiffs in this case allege similar sequences of events. They allege that they ingested Baycol, that they soon thereafter began experiencing muscle pain or weakness, and that they did not experience such symptoms prior to taking Baycol. As in *Morgan,* Plaintiffs here should be given the opportunity to establish for the jury the sequence of events, without aid of expert medical testimony, and the jury should be permitted to decide whether Baycol actually cause Plaintiffs' injuries.

<b><u>Conclusion</u></b>

Plaintiffs' cases are straightforward. They ingested Baycol and shortly thereafter began experiencing muscle pain and weakness. The Defendants admit that Baycol can cause those injuries. There is no complicated issue for the jury to address that would require expert testimony; indeed, the only issue for the jury to decide - whether Baycol actually caused Plaintiffs' injuries - is one with the



common knowledge of ordinary persons, and one that juries decide regularly in similar cases without the aid of expert testimony. Plaintiffs' cases should be permitted to proceed without case-specific expert reports.



Respectfully submitted this _____ day of June, 2004.

"Original Signature on File with Filing Attorney"

_____
Bryan N. Cigelske

OF COUNSEL:
Taylor, Martino & Hedge, P.C.
P.O. Box 894
Mobile, Alabama 36601
(251) 433-3131

## CERTIFICATE OF SERVICE

I, Bryan N. Cigelske, certify that a true and correct copy of the foregoing Motion for Relief from Parts I(A) and I(B) of Pretrial Order No. 114 was electronically served to all counsel of record via Verilaw on June _____, 2004.

"Original Signature on File with Filing Attorney"

_____
Bryan N. Cigelske